UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

GREGORY O. GARMONG,

Petitioner,

vs.

TAHOE REGIONAL PLANNING AGENCY,

Respondent.

3:17-cv-00444-RCJ-WGC

ORDER

This case arises out of the approval of a cell tower project in the Lake Tahoe area. Pending before the Court is a motion for a temporary restraining order ("TRO").

I.     FACTS AND PROCEDURAL HISTORY

Plaintiff Gregory Garmong resides in Douglas County, Nevada near Lake Tahoe and has a second home in Smith, Nevada. (First Am. Compl. ¶¶ 1, 33, ECF No. 84). In the Amended Complaint ("AC"), he has sued the Tahoe Regional Planning Agency ("TRPA"), Verizon Wireless, Inc. ("Verizon"), Complete Wireless Consulting, Inc. ("CWC"), Crown Castle, and eighteen individuals in this Court, listing thirty-four causes of action. His claims arise out of TRPA's grant of a permit ("the Permit") to CWC to construct a cell tower within TRPA's jurisdiction at 811 U.S. Highway 50 ("US 50") in Douglas County ("the Project"). (*Id.* ¶¶ 32–33). The Court has taken judicial notice that the site of the Project is directly across US 50 from

the Skyland neighborhood where Plaintiff lives, which is about a mile south of the Cave Rock Tunnel on US 50 and a mile north of Zephyr Cove on the east shore of Lake Tahoe. The site currently appears free from development except for a water tower.

Plaintiff alleges TRPA mailed a notice of the February 23, 2017 hearing on the Project to property owners like him on February 9 ("the Notice"), which indicated a February 23 hearing on the Project, and that he received the Notice on February 14. (*Id.* ¶¶ 28–30). The Court takes judicial notice that February 14 was a Tuesday. The Notice indicated that Bridget Cornell was the point of contact for the Project, and that the application for the Project ("the Application") could be viewed from 9:00 a.m. to 12:00 p.m. and 1:00 p.m. to 4:00 p.m. on Mondays, Wednesdays, Thursdays, and Fridays. (*Id.* ¶ 28). The Notice also indicated that a "staff summary" for the Project could be viewed at www.trpa.org ("the Website") and at the TRPA office as of February 16. (*Id.*). Written comments had to be received by February 22 or they would not be considered at the February 23 hearing. (*Id.*). When Plaintiff checked the Website on 5:20 p.m. on February 16, he was unable to locate any staff summary, although it became available at some time after that for a total of less than seven days prior to the hearing. (*Id.* ¶ 31).

Plaintiff does not allege that the Application was not viewable at the TRPA office on Wednesday the 15th, Thursday the 16th, Friday the 17th, Monday the 20th, and Wednesday the 22nd. He alleges only that the weather was "very bad" on February 15–17 due to significant snowfall that made it hazardous to drive. (*Id.* ¶ 32). Plaintiff does not allege any such difficulties on Monday the 20th or Wednesday the 22nd, although TRPA was closed on the 20th for President's Day. (*Id.* ¶ 43). The Court previously took judicial notice that there was no recorded precipitation at the South Lake Tahoe Airport (approximately twelve miles by road from Skyland) on February 14th or 15th, 0.24 inches of snow on the 16th, and 0.08 inches of snow on

the 17th, and that there was no recorded precipitation at the Heavenly Mountain Resort (a ski resort about a mile from TRPA's Stateline, Nevada office) February 14th through 16th, and three inches of snow on the 17th. Plaintiff also alleges that the drive to TRPA's office would take "1-1/2 hours in good weather." (*Id.* ¶ 37). But the Court previously took judicial notice that the normal driving time for the 5.3 miles between Skyland and TRPA's office at 128 Market Street, Stateline, Nevada is approximately ten minutes. Plaintiff has clarified in the FAC that he was staying at his home in Smith at the time, not his home in Skyland.

The Court granted a motion to dismiss the Complaint, because Plaintiff had not alleged facts indicating standing. Specifically, he had only alleged that he used the affected area in the past, not that he had any particular plans to use it in the future. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–64 (1992). Plaintiff filed the FAC, alleging that he has visited Genoa Peak Plan Area 060 (TRPA's designation for the area) 24 times in 2018, passing the site of the Project 17 times, and that he plans to continue using the area. (First Am. Compl. ¶ 80). Plaintiff has filed a motion for a temporary restraining order. He has also filed a motion for a preliminary injunction, but the Court will address only the motion for a TRO in the present order.

## II. LEGAL STANDARDS

The Court of Appeals has established two alternative sets of criteria for obtaining preliminary injunctive relief:

> Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007). The Supreme Court later ruled, however, that a plaintiff seeking a preliminary injunction must demonstrate that irreparable harm is "likely," not just possible. *Winter v. NRDC*, 555 U.S. 7, 19–23 (2008) (rejecting the alternative "sliding scale" test, at least as to the irreparable harm requirement). The Court of Appeals has recognized that the "possibility" test was "definitively refuted" in *Winter*, and that "[t]he proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20) (reversing a district court's use of the Court of Appeals' pre-*Winter*, "sliding-scale" standard and remanding for application of the proper standard).

The Court of Appeals later held that although irreparable harm must be more likely than not, the sliding scale approach remains viable as to the other requirements, and a plaintiff needn't be more likely than not to succeed on the merits, so long as there are "serious questions" on the merits. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) ("That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."). *Cottrell* presents some difficulty in light of *Winter* and *Stormans*. To the extent *Cottrell*'s interpretation of *Winter* is inconsistent with *Stormans*, *Stormans* controls. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc). The Supreme Court stated in *Winter* that "[a] plaintiff seeking a preliminary injunction must establish that he is *likely* to succeed on the merits, that he is *likely* to suffer irreparable harm in the absence of preliminary relief, that the balance of

equities tips in his favor, *and* that an injunction is in the public interest." *Winter*, 555 U.S. at 20. As a matter of grammar, the Supreme Court has laid out four conjunctive tests, not a four-factor balancing test, using the word "likely" to modify the success-on-the-merits test in exactly the same way as the irreparable-harm test. In finding the "possibility" of irreparable harm to be insufficient, the *Winter* Court itself emphasized (with italics) the fact that the word "*likely*" modifies the irreparable-harm prong. *Id.* at 22. The word "likely" modifies the success-on-the-merits prong in a textually identical way. *Id.* at 20.

In summary, to satisfy *Winter*, a movant must show that he is "likely" to succeed on the merits and to suffer irreparable harm. As to the irreparable-harm test, *Winter* is clear that "likely" means what it normally means, i.e., more probable than not. There is tension in the case law as to the meaning of "likely" as applied to the success-on-the-merits test. Black's Law Dictionary defines the "likelihood-of-success-on-the-merits test" as "[t]he rule that a litigant who seeks [preliminary relief] must show a reasonable probability of success . . . ." *Black's Law Dictionary* 1069 (10th ed. 2014). A Court of Appeals case predating *Cottrell* restates "[s]erious questions" as "a fair chance of success on the merits." *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1985). The Court of Appeals has reiterated the "fair chance" language since *Cottrell*. *See, e.g., Arc of Cal. v. Douglas*, 757 F.3d 975, 993 (9th Cir. 2014).

To obtain a temporary restraining order Under Fed. R. Civ. P. 65(b), a plaintiff must make a showing that immediate and irreparable injury, loss, or damage will result to plaintiff without a temporary restraining order. The standard for obtaining *ex parte* relief under Rule 65 is very stringent. *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). The temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a

hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

## III. DISCUSSION

Plaintiff requests a TRO not simply against construction on the Project, which he notes began in October 2017 and has now resumed after a winter pause, but against the issuance of the Permit itself (which would also require a halt to construction). The basis for the motion is the first claim in the FAC, wherein Plaintiff alleges the Project is illegal under TRPA's own code ("the Code"). "Public Service . . . transmission and receiving facilities" constitutes a "special use" in Area 060. (TRPA Plan Area Statement 060 Genoa Peak 2, ECF No. 88-3). Plaintiff then argues that although the Project is a transmission and receiving facility, it does not qualify as a "public service" under Chapter 90 of TRPA's Code:

> **Public Service**
>
> Public or quasi-public uses or activities pertaining to communication, transportation, utilities, government, religion, public assembly, education, health and welfare, or cultural and civic support. It does not include such uses or activities that are primarily involved in commercial enterprises.

(TRPA Code of Ordinances Ch. 90, ECF No. 88-5, at 12). Plaintiff argues that although a cell tower pertains to communication, it is a "commercial cellular facility" whose primary purpose is the retail or wholesale sale or rental of telecommunications services, so it is excluded from the definition of a "public service" and it is therefore not a permitted special use in Area 060. But the Code further defines "Quasi-Public" as:

> Having the purpose of providing a public service as a utility and under regulation of state, local, or federal law, such as a telephone company, electric power company, TV cable company, and natural gas supplier . . . .

(*Id.*). A cell tower for a federally regulated company like Verizon is probably a "quasi-public" use, and therefore a "public service," under the Code. The definition of "public service"

distinguishes what it calls "quasi-public" uses from what it calls "commercial enterprises," and a communications facility that services the customers of a federally regulated telephone company would appear to fall under the former category. Such uses are "quasi-public" as opposed to "public," because although they are not tax-funded, government-operated public services, they are utilities companies open to use by the general public that are regulated by governmental entities, as opposed to private commercial facilities not open to use by the general public.

The Court denies the motion for a TRO. As Plaintiff notes, he has been aware of construction in the area for many months. The Court will not abruptly interrupt the Project before Defendants can be heard where the chance of success on the merits is low and Plaintiff has long been aware of construction.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for a Temporary Restraining Order (ECF No. 88) is DENIED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 76), the Motion to Extend Time (ECF No. 77), and the Motion to Strike (ECF No. 81) are DENIED as moot.

IT IS FURTHER ORDERED that the hearing on the motion for preliminary injunction is set for 10:00A.M., Tuesday, August 7, 2018, in RENO COURTROOM 3, before Judge Robert C. Jones.

IT IS SO ORDERED this 24th day of July, 2018.

_____
ROBERT C. JONES
United States District Judge