UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| GREGORY GARMONG,<br><br>        Plaintiff,<br><br>vs.<br><br>TAHOE REGIONAL PLANNING AGENCY, *et al.*,<br><br>        Defendants. | Case No. 3:17-cv-00444-RCJ-WGC<br><br>**ORDER** |

Plaintiff brings this case complaining that the Tahoe Regional Planning Agency ("TRPA"), and its agents, granted a permit to build a cell phone tower ("the Permit") near Lake Tahoe in violation of the Tahoe Regional Planning Compact ("the Compact"), the United States Constitution, and state constitutions. The parties move for dismissal for failure to state a claim (among other things), (ECF Nos. 137, 141, 147), the Court agrees and finds that Plaintiff's claims lacked reasonable basis in law or fact. The Court accordingly dismisses this case with prejudice and awards fees in favor of Defendants.

///

///

///

**FACTUAL BACKGROUND**

The operative complaint, (ECF No. 84), alleges as follows: Plaintiff Gregory Garmong resides in Douglas County, Nevada near Lake Tahoe and has a second home in Smith, Nevada. Plaintiff has sued Defendants TRPA, Verizon Wireless, Inc. ("Verizon"), Complete Wireless Consulting, Inc. ("CWC"), Crown Castle, and eighteen individuals, listing thirty-four causes of action. His claims arise out of TRPA's grant of a permit ("the Permit") to CWC to construct a cell tower within TRPA's jurisdiction at 811 U.S. Highway 50 ("U.S. 50") in Douglas County ("the Project"). The site of the Project is directly across U.S. 50 from the Skyland neighborhood where Plaintiff lives, which is about a mile south of the Cave Rock Tunnel on US 50 and a mile north of Zephyr Cove on the east shore of Lake Tahoe. The Project is located on TRPA Plan Area Genoa Peak (060).

Plaintiff alleges TRPA mailed a notice of the February 23, 2017 hearing on the Project to property owners like him on February 9 ("the Notice"), which indicated a February 23 hearing on the Project, and that he received the Notice on February 14. The Notice indicated that Bridget Cornell was the point of contact for the Project, and that the application for the Project ("the Application") could be viewed from 9:00 a.m. to 12:00 p.m. and 1:00 p.m. to 4:00 p.m. on Mondays, Wednesdays, Thursdays, and Fridays. The Notice also indicated that a "staff summary" for the Project could be viewed at www.trpa.org and at the TRPA office as of February 16. Written comments had to be received by February 22 or they would not be considered at the February 23 hearing. When Plaintiff checked the website on 5:20 p.m. on February 16, he was unable to locate any staff summary, although it became available at some time after that for a total of less than seven days prior to the hearing.

Plaintiff does not allege that the Application was not viewable at the TRPA office on Wednesday the 15th, Thursday the 16th, Friday the 17th, Monday the 20th, and Wednesday the

22nd. He alleges only that the weather was "very bad" on February 15–17 due to significant snowfall that made it hazardous to drive. TRPA was closed on February 20th for President's Day, however Plaintiff does not allege any such difficulties on Wednesday the 22nd. The Court previously took judicial notice that there was no recorded precipitation at the South Lake Tahoe Airport (approximately twelve miles by road from Skyland) on February 14th or 15th, 0.24 inches of snow on the 16th, and 0.08 inches of snow on the 17th, and that there was no recorded precipitation at the Heavenly Mountain Resort (a ski resort about a mile from TRPA's Stateline, Nevada office) February 14th through 16th, and three inches of snow on the 17th. Plaintiff alleges that the drive to TRPA's office would take "1–1/2 hours in good weather." The Court also previously took judicial notice that the normal driving time for the 5.3 miles between Skyland and TRPA's office at 128 Market Street, Stateline, Nevada is approximately ten minutes. Plaintiff has clarified in the FAC that he was staying at his home in Smith at the time, not his second home in Skyland, and that the snowfall occurred between Smith and Skyland.

In the Application, Plaintiff avers Private-Party Defendants made numerous material misrepresentations and misleading omissions to the TRPA. He alleges for example:

> The Staff Summary included numerous false representations, including but limited [sic] to (1) the representation that TRPA staff completed a "Project Review Conformance Checklist and Article V(g) Findings" (Staff Summary pg. 2/35); (2) the representation that TRPA Staff had completed an Initial Environmental Checklist (Staff Summary pg. 2/35); (3) land coverage was evaluated according to Code "Chapter 20" (Staff Summary pg. 6/35), when in fact land coverage is addressed in Code Chapter 30); (4) Staff Summary page 5/35 misrepresents that the "TRPA Initial Environmental Checklist" and "Project Review Conformance Checklist and Article V(g) Findings," were prepared in accordance with Chapter 6, Subsection 6.3.B of the TRPA Code of Ordinances (there is no Subsection 6.3.B); (5) Staff Summary pg. 7/35, misrepresents that the "height findings" are based upon "Chapter 22– Additional Height Findings" (Chapter 22 does not deal at all with height, but instead deals with "Temporary uses, structures, and activities". Instead, height findings are set forth in Code Chapter 37) and (6) Staff Summary at pg. 19/35 misrepresents that the proposed "Wireless Monopine Project" is a permitted use in PAS 060.

(ECF No. 84 ¶ 188.)

Plaintiff also contends Private-Party Defendants were given an unfair advantage in the Permit application proceedings. He claims he was not given notice of the application until about a week before the final hearing was held where the Permit was granted. (*Id.* ¶ 28.) Nonetheless, Plaintiff still submitted a written objection to the Permit, appeared at the hearing and argued against its issuance in person, and appealed the decision to the Legal Committee and the Governing Board. (*Id.* ¶¶ 49–52.)

In spite of Plaintiff's objections, the TRPA issued the Permit on February 23, 2017. (*Id.* ¶ 51.) Plaintiff then brought this case before this Court, in July 2017. On August 28, 2017, this Court dismissed this case for lack of standing. (ECF No. 110.) The Ninth Circuit reversed, (ECF No. 122), and now the Court will consider the merits of Plaintiff's claims.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). That is, a plaintiff must not only specify or imply a cognizable legal theory, but also must allege the facts of the plaintiff's case so that the court can determine whether the plaintiff has any basis for relief under the legal theory the plaintiff has specified or implied, assuming the facts are as the plaintiff alleges (*Twombly-Iqbal* review).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is denied only when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## ANALYSIS

**I.     TRPA Defendants' Motion to Dismiss (ECF No. 137)**

   **A.     Alleged Violations of State Law**

Plaintiff contends the TRPA Defendants violated a number of state laws in the following claims:

- Claim 12 titled "Fraudulent Misrepresentation and Concealment by TRPA"
- Claim 24 titled "Conspiracy and Joint Action of TRPA and the Private-Party Defendants to Deny Plaintiff's Due Process and Equal Protection Rights"[1]

---

[1] Claims 24, 25, 26, and 27 are premised upon alleged violations of the Constitution of the United States as well as the Nevadan and Californian constitutions.

- Claim 25 titled "General Constitutional Challenge to TRPA Failure and refusal to Follow Its Own Codes"
- Claim 26 titled "General Constitutional Challenge to TRPA Notice Procedures"
- Claim 27 titled "General Constitutional Challenge to TRPA's Failure to Provide Reasons and Explanations"
- Claim 31 titled "Petition for Judicial Review Pursuant to Nevada Administrative Procedures Act, NRS Chapter 233B"
- Claim 32 titled "Intentional Infliction of Emotional Distress"
- Claim 33 titled "Unjust Enrichment"
- Claim 34 titled "Doubling of Damages Pursuant to NRS 41.1395"

(ECF No. 84.) Inasmuch as these claims rely upon state law and relate to the issuance of the Permit by the TRPA Defendants, these Defendants argue the claims are preempted. This Court agrees.

While the Compact is an agreement between Nevada and California, it functions as federal law because it has the blessing of Congress. *Jacobson v. TRPA*, 566 F.2d 1353, 1358 (9th Cir. 1977) (reversed on other grounds). "Unless [a compact between states] is unconstitutional, no court may order relief inconsistent with its express terms." *New York v. New Jersey*, 523 U.S. 767, 768 (1998). As federal law, the Compact preempts state law if they are in conflict. *See O'Hara v. Teamsters Union Local # 856*, 151 F.3d 1152, 1160–61 (9th Cir.1998) (citing *Brown v. Hotel & Rest. Employees & Bartenders Int'l Union Local 54*, 468 U.S. 491, 500–01 (1984)). A conflict exists when it is impossible to comply with both state and federal law, or where the state law is an "obstacle" to the full purposes and objectives of Congress. *Id.*

The version of the Compact in effect at the time regulates which legal actions may be filed against the TRPA. Subdivision (j) in Article VI of the Compact states, in part, "Legal actions arising out of or alleging a violation of the provisions of this compact, of the regional plan or of an ordinance or regulation of the agency or of a permit or a condition of a permit issued by the agency are governed by the following . . . ." (ECF No. 19 Ex. 1 at Art. VI(j).) The subdivision proceeds to list a number of restrictions to legal actions and contains the following provision:

///

> In any legal action filed pursuant to this subdivision which challenges an adjudicatory act or decision of the agency to approve or disapprove a project, the scope of judicial inquiry shall extend only to whether there was prejudicial abuse of discretion. Prejudicial abuse of discretion is established if the agency has not proceeded in a manner required by law or if the act or decision of the agency was not supported by substantial evidence in light of the whole record. In making such a determination the court shall not exercise its independent judgment on evidence but shall only determine whether the act or decision was supported by substantial evidence in light of the whole record.

(*Id.* at Art. VI(j)(5).) The subdivision specifies it applies to the following actions: "Actions arising out of activities directly undertaken by the agency," "Actions arising out of the issuance to a person of a lease, permit, license or other entitlement for use by the agency," and "Actions arising out of any other act or failure to act by any person or public agency." (*Id.* at Art. VI(j)(1).)

Under the Compact, claims against the TRPA Defendants for failing to comply with various state laws in issuing a permit are simply not cognizable. Art. VI(j) restricts lawsuits "by any person or public agency" related to "a permit . . . issued by the [TRPA]" only to "judicial inquiry [to the extent] whether there was prejudicial abuse of discretion." As Plaintiff is suing the TRPA Defendants claiming that their issuance of the Permit violated a number of state laws, the claims are preempted—they are foreclosed by the Compact. The Court consequently dismisses them with prejudice.

### B. Alleged Violations of the Compact

Plaintiff alleges the TRPA Defendants failed to comply with the Compact in their issuance of the permit in the following claims:

- Claim 1 titled "The Proposed 'Wireless Monopole Project' Is Not a Permitted Special Use in Plan Area Statement 060"
- Claim 2 titled "TRPA Did Not Evaluate Noise as Required by the Code"
- Claim 3 titled "TRPA Did Not Make Required Findings for Noise"
- Claim 4 titled "TRPA Did Not Evaluate Safety and General Welfare"
- Claim 5 titled "Required Special Use Findings for Safety and General Welfare are not made"
- Claim 6 titled "TRPA Staff Did Not Properly Evaluate Land Coverage Limits as Required by the Code"

- Claim 7 titled "TRPA Did Not Evaluate Alternatives for Land Coverage Limits"
- Claim 8 titled "Permissible Cell Tower Height Limits Are Exceeded"
- Claim 9 titled "TRPA Did Not Evaluate Whether the Proposed Cell Tower Was the Minimum Height Necessary, and Did Not Evaluate Alternatives Having Less Height"
- Claim 10 titled "Failure to Prepare Environmental Impact Statement"
- Claim 11 titled "The Hearing Officer Did Not Make the Required Motions and Findings"
- Claim 13 titled "Violations by Defendants of Provisions of TRPA Compact, Ordinance or Regulations of the Agency"
- Claim 29 titled "Construction of Project in Violation of the TRPA Compact, Code, and PAS 060"

The TRPA Defendants contend these claims are likewise incognizable as Article VI(j)(5) limits claims against them to judicial review. This is correct. Plaintiff points to Article VI(l) as a basis for these causes of action, which reads:

> Any person who violates any provision of this compact or of any ordinance or regulation of the agency or any condition of approval imposed by the agency is subject to a civil penalty not to exceed $5,000. Any such person is subject to an additional civil penalty not to exceed $5,000 per day, for each day on which such a violation persists. In imposing the penalties authorized by this subdivision, the court shall consider the nature of the violation and shall impose a greater penalty if it was willful or resulted from gross negligence than if it resulted from inadvertence or simple negligence.

This provision authorizes the TRPA to issue fines against violators of the Compact—not people against the TRPA. *See, e.g.*, *Tahoe Reg'l Plan. Agency v. Terrace Land Co.*, 772 F. Supp. 506, 512 (D. Nev. 1991) (assessing fines pursuant to this subdivision in favor of the TRPA). Disallowing suits for money damages against a government agency is the usual course of procedure. *See, e.g.*, *Calif. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1095 (9th Cir. 2011) ("When a court determines that an agency's action failed to follow Congress's clear mandate the appropriate remedy is to vacate that action."). The Court accordingly also dismisses these claims with prejudice.

///

**C.     Alleged Violations of the United States Constitution**

The only remaining claims against the TRPA Defendants are the federal constitutional claims:

- Claim 14 titled "Denial of Constitutional Protections by Actual Absence of Impartiality"
- Claim 15 titled "Denial of Constitutional Protections by High Probability of Actual Impartiality"
- Claim 16 titled "Denial of Constitutional Protection by Failure to Disclose Lack of Impartiality in Ongoing Relation to Verizon and Other Cellular Companies"
- Claim 17 titled "Denial of Constitutional Protection of Right to Fair Notice and Opportunity to Be Heard During Project Review Process"
- Claim 18 titled "Denial of Constitutional Protections by TRPA's Arbitrary Action and Failure to Give Reasons and Explanation for Action During, and Resulting from, the Project Review Process"
- Claim 19 titled "Denial of Constitutional Protection of Right to Fair Notice and Opportunity to Be Heard Before Hearing Officer"
- Claim 20 titled "Denial of Constitutional Protection of Right to Reasons and Explanation for Action by Hearing Officer"
- Claim 21 titled "Denial of Constitutional Protection of Reasons and Explanation for Action at Board Level"
- Claim 22 titled "Denial of Equal Protection"
- Claim 23 titled "Denial of Constitutional Protection by TRPA's Combining of Investigative and Decision-making Functions"
- Claim 24 titled "Conspiracy and Joint Action of TRPA and the Private-Party Defendants to Deny Plaintiff's Due Process and Equal Protection Rights"
- Claim 25 titled "General Constitutional Challenge to TRPA Failure and Refusal to Follow Its Own Codes"
- Claim 26 titled "General Constitutional Challenge to TRPA Notice Procedures"
- Claim 27 titled "General Constitutional Challenge to TRPA's Failure to Provide Reasons And Explanations"

Overall, these claims amount to only procedural due process and equal protection causes of action. The TRPA Defendants argue Plaintiff has failed to state either claim. The Court agrees.

*i.     Procedural Due Process*

In order to allege a violation of a one's procedural due process rights, a plaintiff must assert sufficient facts showing "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood*

1  *Unified Sch. Dist.*, 149 F.3d 971, 977 (9th Cir. 1998). Here, Plaintiff has not pleaded facts showing a deprivation of a constitutionally protected interest.

Plaintiff merely claims he had a property interest in the permit not being issued but this is untrue. "A property interest arises only where there is a legitimate claim of entitlement, not merely an abstract need or desire for the particular benefit." *Roybal v. Toppenish Sch. Dist.*, 871 F.3d 927, 931 (9th Cir. 2017) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). A constitutional property interest cannot be based upon an "an indirect impact." *Dumas v. Kipp*, 90 F.3d 386, 392 (9th Cir. 1996). As such, a government entity has "no independent constitutional duty to safeguard . . . neighbors from the negative consequences—economic, aesthetic or otherwise—of . . . [a] construction project" it permitted. *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008). Accordingly, in *Shanks*—as here—where a government reviewing body has discretion to approve or deny a permit application, a party "is not constitutionally entitled to insist on compliance with the procedure itself." *Id.* at 1092. Based upon this clear precedent, Plaintiff has not and cannot successfully assert a property interest in the approval of the Permit.

He also purports to have a liberty interest in the denial of the Permit, this contention is likewise defective. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). An "expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Id.* at 250–51 n. 12. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty.'" *Wilkinson*, 545 U.S. at 221. A state may also "create[] a protected liberty interest by placing substantive limitations on official discretion." *Olim*, 461 U.S. at 249. Plaintiff provides no such claim; he purports the cell phone tower could possibly fall, which could possibly obstruct "the primary hiking trail that Plaintiff uses" or damage the nearby water tower, which could possibly affect

Plaintiff's water supply, which could possibly limit available water to fight forest fires endangering his "safety." (ECF No. 84 ¶ 88.) This argument is wholly unpersuasive as it is far "too attenuated to invoke the procedural guarantees of the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 487 (1995). As Plaintiff cannot state a property or liberty interest, the Court dismisses his procedural due process claims with prejudice.

      *ii.*  *Equal Protection*

Plaintiff asserts equal protection claims under a class-of-one theory—not that he is a member of a suspect class. Such a claim arises where the plaintiff was (1) "intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). For this claim, Plaintiff alleges he was similarly situated with the Private-Party Defendants, (*see, e.g.*, ECF No. 84 ¶ 264) but this is incorrect. It is uncontended these defendants—as the applicants for the Permit—were subject to the different rules and held the opposite interests as the opponents to the Permit. ROP § 5.15.8 (describing applicant's procedures and TRPA's project review process).

Moreover, the only differential treatment that Plaintiff appears to rely upon is that he was given notice late in the application process. (*See, e.g.*, ECF No. 84 ¶ 225 ("TRPA failed to give . . . notice until after the Project Review Process was substantially completed, . . . resulting in an unfair advantage to the Private-Party Defendants."). He admits, however, he received notice of the hearing before the issuance of the permit, participated in the final hearing, appealed the grant of the Permit, filed a statement on appeal and appeared before the Legal Committee and the Governing Board to advocate for his position. (ECF No. 84 ¶¶ 28, 49, 51–52.) Having permit applicants participate in initial review process without the general public's involvement to be followed by a final hearing with the public's input is reasonable. If permit applicants provided false statement to the TRPA in the initial process, the residents may present these allegations at

the final hearing and appeal the decision to the Legal Committee and the Governing Board, both of which Plaintiff did. The differential treatment does not violate the equal protection clause, so the Court denies the claim with prejudice.

### D. The Private-Party Defendants Joinder

The Private-Party Defendants have joined this motion. (ECF No. 140.) The successful arguments in this motion also dictate the Court dismiss Claim 24 alleged against the Private-Party Defendants. Here, Plaintiff alleges the TRPA Defendants and the Private-Party Defendants conspired to deprive him of his due process and equal protections rights. Inasmuch as this claim is based upon Nevadan and Californian constitutions (the complaint does not specify), these theories are preempted. As for the United States Constitution, Plaintiff cannot state these claims since he does not have a protected property or liberty interest and cannot state facts showing that he was treating differently without a rational basis.

## II. *Private Defendants' Special Anti-SLAPP Motion to Dismiss (ECF No. 142)*

Private-Party Defendants move for dismissal in a special motion on the grounds Plaintiff's claims violate Nevada Anti-SLAPP laws. Essential to this defense is whether Private-Party Defendants' petition was made in good faith. NRS 41.650. In this motion, Private-Party Defendants rely upon evidence (specifically Maria Kim's declaration) to demonstrate that they acted in good faith. "[W]hen an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply. But in such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), amended, 897 F.3d 1224 (9th Cir. 2018). As such, the Court would deny this motion without prejudice, however, as the Court finds Private-Party Defendants' other motion to dismiss persuasive, the Court denies this motion as moot.

### III. *Private-Party Defendants' Motion to Dismiss (ECF No. 141)*

As the Court dismisses Claim 24 against the Private-Party Defendants based upon their joinder to the TRPA's motion to dismiss, there are six remaining claims asserted them:

- Claim 13 titled "Violations by Defendants of Provisions of TRPA Compact, Ordinance, or Regulation of the Agency"
- Claim 28 titled "Fraudulent Misrepresentation by Private-Party Defendants"
- Claim 29 titled "Construction of Project in Violation of the TRPA Compact, Code, and PAS 060"
- Claim 30 titled "Complete Wireless Consulting, Inc. Was Not Qualified to do Business in Nevada"
- Claim 32 titled "Intentional Infliction of Emotional Distress"
- Claim 34 titled "Doubling of Damages Pursuant to NRS 41.1395"

Because these claims are either barred by the *Noerr-Pennington* doctrine or not legally cognizable, the Court dismisses them with prejudice.

#### A. The *Noerr-Pennington* Doctrine

All of the remaining claims against the Private-Party Defendants, except Claims 30, are based on their petitioning of the TRPA for the Permit. For example, the allegations include such assertions as the following:

> During the course of the Project Review Process, the Private-Party defendants made representations to TRPA, and thence to the public and to Plaintiff, that were either false or not relevant under the Compact, the Code, the ROP, and PAS 060, in order to give the appearance of conformance with the Compact, the Code, the ROP, and PAS 060. These misrepresentations included, but are not limited to, (a) conformance of the Project with PAS 060; (b) noise levels associated with the Project; (c) the actual area of Assessor's Parcel No: 1318-03-000-001; (d) the calculation of land-area coverage, (e) height of the cellular tower of the Project; (f) absence of alternatives to the placement of the Project; and (g) safety of the Project.

(ECF No. 84 ¶ 307.) In the same fashion, every allegation against these defendants is in regard to their petition for the Permit, with the singular exception that Defendant CWC, Inc. failed to register to do business in Nevada. Private-Party Defendants therefore move to dismiss all claims against them, except for Claim 30, on the basis of the *Noerr-Pennington* Doctrine. The Court grants this request.

Under the *Noerr-Pennington* Doctrine, persons or entities who petition any part of government are immune from liability for their petitioning activity, including any conduct that is merely "incidental" to any effort to influence government. *Sosa v. DIRECTV Inc.*, 437 F.3d 923, 934–35 (9th Cir. 2006). "The doctrine immunizes petitions directed at any branch of government, including the executive, legislative, judicial and administrative agencies." *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090,1092 (9th Cir. 2000). The doctrine "bars any claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected petitioning activity." *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 956 (S.D. Cal. 1996). Petitioning the government encompasses efforts to obtain or oppose land use or other government permits, including meeting with, furnishing information to, and communicating with government officials in connection with such activities. *Empress LLC v. City and County of San Francisco*, 419 F.3d 1052, 1056–57 (9th Cir. 2005).

For the *Noerr-Pennington* doctrine, there is an exception for "sham" petitions. *E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961). "A 'sham' situation involves a defendant whose activities are not genuinely aimed at procuring favorable government action at all, not one who genuinely seeks to achieve his governmental result but does so through improper means." *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991). False statements alone are insufficient to render a petition a sham. *See, e.g.*, *Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1060 (9th Cir. 1998) (affirming the grant of a motion to dismiss premised upon the *Noerr-Pennington* doctrine despite allegations of false statements); *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886 (9th Cir. 1988) (same); *see also Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 58 (1993) ("[A] successful effort to influence governmental action . . . certainly cannot be characterized as a sham." (internal quotation marks and citation omitted)).

The exception applies here as the claims arise out of Private-Party Defendants' petitioning of the government for the Permit. Plaintiff appears to suggest that the exception does not apply here as he characterizes it as "an antitrust exemption." (ECF No. 151 at 14.) While the doctrine may have originated in the antitrust context, courts have extended the doctrine to "bar[] any claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected petitioning activity." *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 956 (S.D. Cal. 1996). Plaintiff also argues the exception does not apply since his complaint contains allegations Private-Party Defendants made material misrepresentations in their petition and advocacy for the Permit. This argument is unavailing as the allegations, even if true, fail to show that the Permit petition was a sham. In fact, the allegations could not, Plaintiff merely claims his harm is from the outcome of the petition for the Permit, not the process, and the fact that the efforts in acquiring the Permit were successful demonstrate the petition was not a sham.

### B. Failure to Register to Do Business in Nevada

Plaintiff raises a cause of action against Defendant CWC alleging that it failed to register to do business in Nevada. Assuming this is true, this cause of action must still fail. The statute requiring registry of business in Nevada does not provide for a private cause of action—only fines. NRS 80.055. Consequently, the Court dismisses this cause of action, and in sum, it dismisses all causes of action against Defendants.

### IV. *Leave to Amend*

Plaintiff argues the Court should grant him leave to amend to remedy any defect this Court finds. The Court disagrees. No allegations could remedy the defects of preemption and the lack of causes of action for violating the TRPA or for failing to register to do business in Nevada. Furthermore, Plaintiff's allegations in the operative complaint make clear that he lacks a protected property or liberty interest in the Permit, that he was not unreasonably treated differently, and that

the *Noerr-Pennington* doctrine applies to the remaining claims against the Private-Party Defendants. Lastly, Plaintiff could have brought a claim against the TRPA for judicial review of its approval of the Permit for a "prejudicial abuse of discretion" pursuant to the Compact. (ECF No. 19 Ex. 1 at Art. VI(j)(5).) Plaintiff was informed of this claim in the TRPA's prior motions to dismiss, (ECF Nos. 17, 101), yet Plaintiff has declined to raise this claim despite two grants for leave to amend, (ECF Nos. 83, 132). Accordingly, the Court finds amendment would be futile. It therefore dismisses this case with prejudice and denies the remaining motions as moot.

## VI. Attorney Fees

Lastly, Private-Party Defendants request an award of attorney fees in their motions to dismiss pursuant to 42 U.S.C. § 1988 and Nevada Anti-SLAPP statutes. The Court does not find attorney fees to be proper under the Nevada Anti-SLAPP statutes as the Court denies that basis for dismissal. On the other hand, the Court does agree that Plaintiff's constitutional claims were "frivolous, unreasonable, or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (per curiam) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). Pursuant to § 1988, Defendants are therefore entitled to an award of reasonable attorney fees and costs in litigating these claims. Defendants shall file a motion for attorney fees providing a basis for such a reasonable award within thirty days of the issuance of this order. Briefing shall follow LR 7-2(b).

///
///
///
///
///
///

**CONCLUSION**

IT IS HEREBY ORDERED that Plaintiff's Motion for Preliminary Injunction (ECF No. 89) is DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss (ECF No. 137) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss (ECF No. 141) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Special Motion to Dismiss (ECF No. 142) is DENIED AS MOOT.

IT IS FURTHER ORDERED that Plaintiff's Motion to Extend Time to File a Reply to Defendants' Joint Response to the Motion for Preliminary Injunction (ECF No. 145) is DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendants are entitled to an award of reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988. Defendants shall file a motion within thirty days of the entry of this Order for such a reasonable fee.

IT IS FURTHER ORDERED that all of the claims are dismissed with prejudice.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment accordingly and close the case.

IT IS SO ORDERED.

Dated September 9, 2021.

_____
ROBERT C. JONES
United States District Judge